**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| ANNA M. SMITH, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Civil Action No. 08-01324 |
| | ) Judge Nora Barry Fischer |
| LINCOLN BENEFIT | ) |
| LIFE COMPANY, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OPINION and ORDER**

**I.    Introduction**

Anna M. Smith ("Plaintiff") brings this action for payment of life insurance benefits

stemming from the untimely death of her husband, Jon Smith ("Decedent"). Initially, Plaintiff filed

her Complaint in the Court of Common Pleas of Allegheny County alleging breach of contract,

breach of duty of good faith and fair dealing, bad faith in violation of 42 Pa.C.S.A. §8371 and

negligent misrepresentation on the part of Lincoln Benefit Life Company ("Defendant"). (Docket

No. 1-3). On September 23, 2008, this case was timely removed to this Court. (Docket No. 1).

Thereafter, on September 30, 2008, Defendant filed a Motion to Dismiss Plaintiff's Complaint

(Docket No. 3) and Brief in Support (Docket No. 4). In turn, Plaintiff filed a Response to

Defendant's Motion to Dismiss on October 20, 2008. (Docket No. 9). On consideration of the

Motion, this Court entered an Order requiring Defendant to file supplemental briefing on the issue

of which state law is applicable to Plaintiff's claims. (Docket No. 13). Accordingly, on December

19, 2008, Defendant filed a Reply Brief addressing the choice of law question. (Docket No. 14).

Plaintiff then filed her Response to Defendant's supplemental brief on January 12, 2009. (Docket No. 15). Based on consideration of the foregoing, and for the following reasons, Defendant' Motion to Dismiss is GRANTED.

## II.  Factual Background

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, at this stage the Court accepts all of the allegations in the Complaint and reasonable inferences that can be drawn therefrom. Fed.R.Civ.P. 12(b)(6); *Buck v. Hampton Twp.Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006). The facts of this case are, therefore, as follows.

On December 27, 1996, Defendant issued to Decedent a Term Life Insurance Policy, bearing policy number 0100680899, and having a face amount of $500,000. (Docket No. 1-3 at ¶3; Docket No. 1-3, Exh. A). On his application for insurance, Decedent's title is listed as "Director of Sales and Marketing." (Docket No. 1-3, Exh. A). The first page of the policy provides the following relevant language:

> This policy insures the life of the insured. If the insured dies while this policy is in force, the death benefit will be paid to the beneficiary.
>
> The premium for this policy is payable, during the lifetime of the insured, until the termination date. After the initial premium guarantee period, the current premium scale may be changed on the policy anniversary but may not be increased above the guaranteed maximum rates.
> ...
> This is only a summary of the policy terms. The detailed provisions of this policy will control.  The provisions of your policy are set forth in the following sections:
>
> ...
> Death Benefit ....................Page 5
> Beneficiary ........................Page 6
> Premium Payment ............ Page 6
>
> ...

2

(Docket No. 1-3, Exh. A at 3). The policy names Decedent's wife, Plaintiff, as the primary beneficiary on the policy. (Docket No. 1-3 at ¶4; Docket No. 1-3, Exh. E). Plaintiff remained the primary beneficiary on the policy until Decedent's death. (Docket No. 1-3 at ¶4; Docket No. 1-3, Exh. E).

In regard to premiums, the policy provides:

**Premium Payment**

*premium payments*
To keep this policy in force during the lifetime of the insured, you must pay the premiums when they are due.

The first premium is due on the issue date. The insured must be alive when the first premium is paid. There is no insurance until the first premium is paid.

A premium paid is deemed fully earned on its due date. Once earned, a premium is non-refundable except as may be specifically stated in the policy.

Premiums must be sent to us at our home office. If you ask, we will give you a receipt.

*frequency of premium payments*
You may pay premiums annually, semi-annually, quarterly, or on an automatic premium basis; for example, semi-annual automatic, quarterly-automatic, or monthly-automatic. The initial amount of premium for your frequency is stated in the Schedule. You cannot select a premium frequency that would result in a premium payment of less than $10.00. The amount of premiums due in all years for an annual frequency is shown in the Schedule. If you pay premiums other than annu-

ally, the amount of premium for your frequency
will be figured by multiplying the annual pre-
miums shown by the following factors:

| | |
|---|---|
| semi-annual | .52 |
| semi-annual automatic | .51 |
| quarterly | .27 |
| quarterly-automatic | .26 |
| monthly-automatic | .087 |

(Docket No. 1-3, Exh. A at 5-6). Decedent's initial annual policy premium, according to the policy,

was $1,670.00. (Docket No. 1-3, Exh. A at 3). Subsequently, the monthly premium amount was

$141.96, which sum the Decedent elected to have automatically withdrawn from his bank account.

(Docket No. 1-3 at ¶6; Docket No. 1-3, Exh. A at 3). For the time period of December 27, 1996

through September 17, 2007, Defendant received the require monthly premium payment in the

amount of $141.96, in the form of automatic withdrawal from the Decedent's bank account. (Docket

No. 1-3 at ¶7).

On or about September 17, 2007, Decedent contacted Defendant and informed an agent that

Decedent was "in the process of changing banks." (Docket No. 1-3 at ¶8). "During the course of this

communication, Decedent and [Defendant] decided that Decedent would temporarily cease paying

his premiums via a monthly automatic withdrawal and would be placed on a quarterly premium

payment plan until Decedent could set up a monthly automatic withdrawal from his new financial

institution." (Docket No. 1 at ¶8).

Decedent received a "Notice of Payment Due" from Defendant dated September 17, 2007.

(Docket No. 1-3 at ¶9; Docket No. 1-3, Exh. B). The statement provided that a premium on

4

Decedent's policy in the amount of $450.90 *was due on September 27, 2007*. (Docket No.1, Exh. B). Decedent received a "Second Notice of Payment Due" from Defendant dated October 6, 2007. (Docket No. 1-3 at ¶10; Docket No. 1-3 at Exh. C). In addition to stating the amount of the premium payment due, and *a due date of September 27, 2007*, the "Second Notice of Payment Due" stated: "[y]our policy has entered its grace period as we have not yet received the premium due. Please submit your payment along with the bottom portion of this notice in the enclosed return envelope." (Docket No. 1-3 at ¶10; Docket No. 1-3, Exh. C). The "Second Notice of Premium Due" does not otherwise define "grace period." (Docket No. 1-3, Exh. C). The insurance policy, however, contains the following provision in reference to "grace period":

> *grace period*
> You are allowed a grace period of thirty-one days after the premium due date in which to pay premiums. This policy remains in force during the grace period. There is no grace period for the first premium.

(Docket No. 1-3, Exh. A at p. 7) (emphasis in original). In regard to the "grace period," the policy further provides:

> *non-payment of premiums*
> If you do not pay the premiums due by the end of the grace period, this policy will lapse as of the due date of the unpaid premium. When the policy lapses, it is no longer in force.
>
> *reinstatement*
> If this policy lapses because you did not pay the premiums, you may ask us to reinstate it.
>
> We will reinstate the policy if you:

1.     Request reinstatement prior to the termi-
nation date and within five years of the due
date of the first premium which was not
paid. This request must be made to us at our
home office.

2.     Give us the proof we require that the insured
is still insurable to the stated premium
according to our normal rules.

3.     Pay all due and unpaid premiums, plus 6%
interest per year, compounded annually.

(Docket No. 1-3, Exh. A at 7) (emphases in original). In her Complaint, Plaintiff alleges that both

she and Decedent misunderstood the meaning of "grace period" in the policy:

> it was the understanding of Decedent as well as Plaintiff that the "grace period"
> identified on the [Second Notice of Payment Due] was approximately 30 days. It was
> also their understanding that the 30-day "grace period" would begin to run as of the
> date of the Second Notice on October 6, 2007.

(Docket No. 1-3 at ¶12).

With the exception of these two notices of payment due, Defendant "did not contact, in

writing or orally, Decedent and/or Plaintiff at any time between September 17, 2007 through

November 1, 2007." (Docket No. 1-3 at ¶13). On October 31, 2007, the Decedent began

experiencing respiratory problems and on November 1, 2007 was pronounced dead. (Docket No. 1-3

at ¶¶ 14015). Plaintiff contacted Defendant on November 1, 2007 in regard to the death benefit on

Decedent's policy. (Docket No. 1-3 at ¶15). During the course of that conversation, Defendant's

agent instructed Plaintiff not to send the past due premium payment because Defendant would deduct

this amount from the death benefit. (Docket No. 1-3 at ¶15). Plaintiff was further instructed to

provide Defendant with a copy of Decedent's death certificate. (Id.).

Plaintiff alleges that she thereafter received a letter addressed to Decedent from Defendant, dated October 28, 2007. (Docket No. 1-3, Exh. D; Docket No. 1-3 at ¶17). The letter provided, in pertinent part, as follows:

> The grace period for your premium payment on your policy has expired. We don't know why the premium for your life insurance policy hasn't been received, but we would be extremely sorry to lose you as a policyholder. Insurance policies are among the family's most important possessions, and they may be difficult, if not impossible, to replace later.

(Docket No. 1-3, Exh. D). The letter further provides the following information regarding the opportunity to reapply:

> To continue your valuable coverage, complete the Application for Reinstatement form on the back and return it with your payment of $450.90. Upon underwriting approval, and receipt of the sufficient payment, coverage will continue uninterrupted.
>
> This policy, when in force, gives you valuable protection. Return your application for reinstatement and payment today.

(Docket No. 1-3, Exh. D). On November 6, 2007, Plaintiff received a second letter from Defendant dated November 2, 2007 which stated that Defendant "determined that this policy terminated on October 28, 2007. The termination was due to lack of premium payments required to keep the policy in-force. Unfortunately, because no coverage was in effect at the time of death under this policy record, no benefits are payable." (Docket No. 1-3, Exh. 3; Docket No. 1-3 at ¶18). In regard to termination and/or changes in the policy, the policy includes the following provision:

### Other Terms of Your Policy

*our contract with you*

7

These pages are your entire contract with us. We issued it based upon your app and the payment of premiums by you. A copy of the app is included.

...

Only our officers have authority to change this contract. No agent may do this. Any change must be written.

...

when this policy stops
This policy will stop on the earliest of:

1. The date you make a written request;
2. The date the insured dies;
3. The termination date as shown in the Schedule;
4. The date of lapse for non-payment of premium;
5. The date of conversion; or
6. The date of exchange.

(Docket No. 1-3, Exh. A at 7).

Through counsel, Plaintiff contacted Defendant regarding Defendant's denial of benefits under the policy. (Docket No. 1-3 at ¶19). Defendant responded by letter, dated January 31, 2008, informing her that the policy, bearing policy number 0100680799 was not in effect at the time of Decedent's death and, therefore, no benefits were available. (Docket No. 1-3 at ¶20). Plaintiff thereafter commenced this action for Defendant's failure to pay death benefits under the policy. (Docket No. 1-3 at ¶¶21-22).

### III. Standard of Review

In light of the Supreme Court's decision in *Bell Atlantic Corp. v. Twombly*, 127, S.Ct. 1955, 550 U.S. 544 (2007), a complaint may be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir.2008) (quoting *Twombly*, 127 S.Ct. at

1974). In order to survive a motion to dismiss under 12(b)(6), a claim for relief "requires more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 127 S.Ct. at 1965. Moreover, " a plaintiff must aver sufficient factual allegations in order "to raise a right to relief above the speculative level." *Ayers v. Osram Slyvania, Inc.*, Civil Action No. 07-1780, 2008 WL 4425279 at *2 (M.D.Pa. Sept. 24, 2008) (citing *Twombly*, 127 S.Ct. at 1965).

In considering a Rule 12(b)(6) motion, a court accepts all of the plaintiff's allegations as true and construes all inferences in the light most favorable to the non-moving party. *Umland v. Planco Fin. Servs.*, Civil Action No. 06-4688, 2008 WL 4138408 (3d Cir. Sept. 9, 2008) (citing *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir.2006)). However, a court will not accept bald assertions, unwarranted inferences, or sweeping legal conclusions cast in the form of factual allegations. *See In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d 198, 215 (3d Cir.2002); *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 n. 8 (3d Cir.1997). A court is not required to consider legal conclusions; rather, it should determine whether the plaintiff should be permitted to offer evidence in support of the allegations. *Maio v. Aetna*, 221 F.3d 472, 482 (3d Cir.2000).

The failure-to-state-a-claim standard of Rule 12(b)(6) seeks to promote judicial economy by eliminating unwarranted discovery and fact-finding. *United States ex. rel. Repko v. Guthrie Clinic, P.C.*, 557 F.Supp.2d 522, 525 (M.D.Pa.2008). Therefore, a plaintiff must put forth sufficient facts that, when taken as true, suggest the required elements of a particular legal theory. *See Wilkerson v. New Media Tech. Charter Sch., Inc.*, 522 F.3d 315 (3d Cir.2008) (citing *Phillips v. County of Allegheny*, 515 F.3d 224 (3d Cir.2008)) (citations omitted). Generally, this does not impose a heightened burden on the claimant above that already required by Rule 8(a)(2) of the Federal Rules of Civil Procedure, but instead calls for fair notice of the factual basis of a claim while "rais[ing] a

reasonable expectation that discovery will reveal evidence of the necessary element." *Weaver v. UPMC*, Civil Action No. 08-411, 2008 WL 2942139 at *3 (W.D.Pa. July 30, 2008) (citing *Phillips*, 515 F.3d at 234 and *Twombly*, 127 S.Ct. at 1964-65).

In its review of a motion to dismiss, a court may, in addition to the contents of the complaint, consider any attached exhibits and evidence beyond the complaint "including public records ..., documents essential to plaintiff's claim which are attached to defendant's motion, and items appearing in the record of the case." *Core Const. & Remediation, Inc. v. Village of Spring Valley, NY*, No. Civ.A. 06-CV-1346, 2007 WL 2844870, at *2 (E.D. Pa. Sept. 27, 2007) (citing *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1385 n.1 and n.2 (3d Cir. 1995)) (internal citation omitted)).[1]

## IV. Discussion

As a result of its failure to pay benefits under the insurance policy, Plaintiff alleges that Defendant is liable to her for (1) breach of contract; (2) breach of duty of good faith and fair dealing; (3) bad faith in violation of 42 Pa.C.S.A.§8371; and (4) negligent misrepresentation. In this motion, Defendant moves to dismiss all counts of Plaintiff's Complaint on the ground that she has failed to state a claim upon which relief may be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure. The Court will address each of Plaintiff's claims, in turn, once it resolves the question

---

[1]

In this matter, Plaintiff has attached the following documents to her Complaint, which the Court has considered: (1) Decedent's application for life insurance and insurance policy bearing policy number 0100680799 (Docket No. 1, Exh. A); (2) "Notice of Payment Due" dated September 17, 2007. (Docket No. 1, Exh. B); (3) "Second Notice of Payment Due" dated October 6, 2007 (Docket No. 1, Exh. C); (4) a letter from Defendant to Decedent dated October 28, 2007, informing Decedent that the grace period had expired (Docket No. 1, Exh. D); and (4) a letter from Defendant to Plaintiff dated November 2, 2007 denying benefits. (Docket No. 1, Exh. E).

of choice of law.

## A.    Choice of Law

On consideration of Plaintiff's Complaint and Defendant's Motion to Dismiss, the Court

ordered that the parties provide supplemental briefing, addressing the appropriate choice of law.

(Docket No. 13). The Court will summarize the parties' arguments and then analyze the choice of

law issues as they pertain to each cause of action asserted by Plaintiff.

### 1.    Parties' Arguments Regarding Choice of Law

In its Reply Brief, (Docket No. 14), Defendant argues that Arkansas law should apply to

Plaintiff's breach of contract claims, as the insurance contract contains a choice of law provision

selecting Arkansas law. Defendant further argues, regardless of whether Arkansas or Pennsylvania

law applies to the breach of contract claims, the outcome remains the same and Plaintiff's claim

fails. (Docket No. 14 at 2). In regard to Plaintiff's tort claims, Defendant acknowledges that the

choice of law provision in the insurance policy does not encompass Plaintiff's tort claims. (Docket

No. 14 at 8). As a result, Pennsylvania law should apply. (Docket No. 14 at 8). The Defendant then

argues that, regardless of whether Pennsylvania or Arkansas law applies to Plaintiff's tort claims,

said claims cannot withstand Defendant's motion. (Docket No. 14 at 2).

In response, Plaintiff argues that, applying Pennsylvania's *Griffith* analysis to the instant

matter, there is no conflict between Arkansas and Pennsylvania law, and thus, Pennsylvania law

should apply to her breach of contract claims.[2] (Docket No. 15 at 4). Plaintiff does concede,

however, that Arkansas law arguably applies to her breach of contract claims, insofar as the

---

2

The Court will address *Griffith* and its progeny in its choice of law analysis, *infra* at 15-16).

11

insurance contract in dispute contains a choice of law provision. Plaintiff further contends that, regardless of whether Pennsylvania or Arkansas substantive law applies to her breach of contract claim, she has sufficiently pled a claim for breach of the subject insurance contract. (Docket No. 15 at 5). In regard to her tort claims, Plaintiff argues that the choice of law provision in the policy does not govern, insofar as said provision should be read narrowly to encompass only her contract claims. Instead, Plaintiff maintains that under *Griffith*, Pennsylvania law should apply to her tort claims. (Docket No. 15 at 12-14).

### 2. The Court's Analysis of Choice of Law

This Court's jurisdiction rests on diversity of the parties. 28 U.S.C. 1332(a)(1). A federal court sitting in diversity must apply the substantive law of the forum state, including its choice of law rules. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938); *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). As such, in determining the appropriate choice of law, this Court applies Pennsylvania choice of law rules.

### a. Application of Choice of Law Provision in the Contract

At the outset of its choice of law analysis, the Court notes that the insurance policy at issue contains the following provision

*conformity with state law*

This policy is subject to the laws of the state where
the app[sic] was signed. If any part of the policy does
not comply with the law, it will be treated by us
as if it did.

(Docket No. 1-3, Exh. A at 19) (emphasis in original).

Under Pennsylvania choice of law rules, a choice of law provision in an insurance contract

will be given effect. *Miller v. Allstate Ins. Co.*, 763 A.2d 401, 403 (Pa. Super. 2000); *Nationwide Mut. Ins. Co. v. West*, 807 A.2d 916, 920 (Pa. Super. 2002) (citing *Smith v. Commonwealth Nat. Bank*, 557 A.2d 775, 777 (Pa. Super. 1989)); *Grimm v. Discover Financial Services*, Civil Action Nos. 07-646, 08-832, 2008 WL 4821695 at *7 (W.D. Pa. November 4, 2008). *See also* RESTATEMENT (SECOND) OF CONFLICTS OF LAWS §187(1)("[t]he law of the state chosen by the parties to govern their contractual rights will be applied").[3]

While contractual claims are governed by choice of law provisions contained in an insurance contract, said provisions, "do not govern tort claims between contracting parties unless the fair import of the provision embraces all aspects of the legal relationship." *Jiffy Lube Intern., Inc. v. Jiffy Lube of Pa., Inc.*, 848 F.Supp. 569, 576 (E.D. Pa. 1994). In order to determine whether a choice of law provision in a contract will govern both a plaintiff's contract and tort claims, a court must examine the provision in question to determine "'based on their narrowness or breadth, whether the parties intended [the clause] to encompass all elements of their association.'" *Id.* (quoting *Composiflex, Inc. v. Advanced Cardiovascular Systems, Inc.*, 795 F.Supp. 151, 157 (W.D. Pa.

---

[3]

The Court notes that, regardless of whether the choice of law provision applies to Plaintiff's breach of contract claim under the insurance policy, under traditional Pennsylvania choice of law rules, Arkansas law would likewise apply. Generally, under Pennsylvania law, an insurance contract will be governed by the laws of the state in which the contract was made. *Travelers Indem. Co. v. Fantozzi*, 825 F.Supp. 80, 85 (E.D. Pa. 1993). In the insurance context, the place of contracting will be the place of delivery. *Id.* (citing *Centennial Ins. Co. v. Meritor Savings Bank, Inc.*, Civ.A.No. 91-6346, 1992 WL 164906 at *2 (E.D. Pa. June 2, 1992)). Also, "[i]n the absence of proof as to the place of delivery, there is a presumption of delivery at the residence of the insured." *Id.* (citing *Crawford*, 221 A.2d at 881) (citation omitted). Here, Plaintiff states that it is her "belief" that Decedent signed the application for insurance in Arkansas. (Docket No. 15 at 4). Furthermore, the application for insurance lists Decedent's home address as Bentonville, Arkansas. (Docket No.1-3, Exh. A). While the Court is without proof of this claim, it can presume that delivery occurred at Decedent's then place of residence, in Arkansas. (Docket No. 1-3, Exh. A at 1).

1992)).

In this case, the choice of law provision in the policy is narrowly limited to "this policy," providing that "*this policy* is subject to the laws of the state where the app was signed ..." and again, that "if any part of *this policy* does not comply with law, it will be treated by us as if it did." (Docket No. 1-3, Exh. A at 19) (emphases added). By narrowing the language of the choice of law provision, it is clear that the parties intended for said provision to govern only contract claims arising under the policy and not "all elements of their association." *Jiffy Lube Intern.*, 858 F.Supp. at 576.

In addressing whether a choice of law provision encompassed all of a plaintiff's claims under Pennsylvania choice of law rules, the United States Court of Appeals for the Third Circuit has held that a choice of law clause providing that "'this agreement will be governed by, and construed and enforced in accordance with the law of [Pennsylvania].'" "by its own terms" was "narrowly drafted to encompass only the underlying [] agreement itself, and not necessarily the entire relationship ... ." *Black Box Corp. v. Markham*, 127 Fed. Appx. 22, 25 (3d Cir. 2005). Following the Court of Appeals' analysis in *Black Box*, this Court has recently held that a"[n]arrow choice of law provision stating that a contract's terms or enforcement are to be governed, or construed, by the laws of another state are generally interpreted by Pennsylvania courts to relate only to the construction and interpretation of the contract at issue." *Grimm v. Discover Fin. Serv.*, Civil Action Nos. 08-747, 08-832, 2008 WL 4821695 at *7 (W.D. Pa. November 4, 2008). *See also, e.g., American Hearing Aid Ass's, Inc. v. GN Resound N.A.*, 309 F.Supp. 694, 704, n. 14 (E.D. Pa. 2004) (finding that where the choice of law provision limits its scope to "this agreement," said provision will not govern tort claims); *Coram v. Healthcare Corp. v. Aetna U.S. Healthcare*, 94 F.Supp.2d 589, 594 (E.D. Pa. 1999) (holding that, where the choice of law provision is not broadly drafted to encompass tort

claims with language such as "all matters," the plaintiff's fraud and negligent misrepresentation claims were not subject to the contract's choice of law provision).

Accordingly, the Court finds that the choice of law provision contained in the subject insurance policy is narrow in its scope and, therefore, does not govern Plaintiff's tort claims. As such, the Court turns now to the appropriate choice of law applicable to said claims.

**b.     Analysis of Choice of Law for Plaintiff's Tort Claims**

In determining the law applicable to Plaintiff's tort claims, this Court applies Pennsylvania's choice of law rules. *Klaxon* Co., 313 U.S. at 496. When engaging in a choice of law analysis, Pennsylvania courts rely heavily on the Restatement (Second) of Conflicts rules. *See Celebre v. Windsor-Mount Joy Mut. Ins. Co.*, No. Civ. A 93-5212, 1994 WL 13840 at *3 (E.D. Pa. January 14, 2004) (citing *e.g.*, *Triangle Publications, Inc. v. Liberty Mut. Ins. Co.*, 703 F.Supp. 367 (E.D. Pa. 1989); *CBS, Inc. v. Film Corp. of America*, 545 F.Supp. 1382, 1385 (E.D. Pa. 1982); *Melville v. American Home Assur. Co.*, 584 F.2d 1306 (3d Cir. 1978); and *Griffith v. United Airlines, Inc.*, 203 A.2d 796 (Pa. 1964)) (explanatory parentheticals omitted). However, in determining choice of law, Pennsylvania has combined a "governmental interest analysis" with the Restatement (Second) of Conflicts theory, thereby adopting a "hybrid" approach. *Hammersmith v. TIG Ins. Co.*, 480 F.2d 220, 230 (3d Cir. 2007)( citing *Melville v. American Home Assur. Co.*, 584 F.2d 1306 (3d Cir. 1978) and *Griffith v. United Airlines, Inc.*, 203 A.2d 796 (Pa. 1964)).

Beginning with *Griffith v. United Airlines*, 203 A.2d 796 (Pa. 1964), Pennsylvania courts abandoned the traditional *lex loci delicti* rule (which mandated that, in a conflict of laws situation the law of the place where the injury occurred be applied in tort actions) for a "more flexible rule which permits analysis of the policies and interests underlying the particular issue before the court."

*Griffith*, 203 A.2d at 805-6 (citing *Babcock v. Jackson*, 240 N.Y.S.2d 749)). The *Griffith* Court held

that a hybrid approach would give authority to the "place having the most interest in the problem"

thereby giving the interested state "paramount control over the legal issues arising out of a particular

factual context." *Id.* (quotations omitted). As later explained by the Third Circuit Court of Appeals

in *Compagnie des Bauxites de Guinee v. Argonaut-Midwest Ins. Co.*, 880 F.2d 685, 689 (3d Cir.

1989), "the *Griffith* test 'takes into account both the grouping of contacts [listed in the Restatement

(Second) of Conflict of Laws § 188(2) (1971)] with the various concerned jurisdictions and the

interests and policies that may be validly asserted by each jurisdiction.'" (quoting *Melville v.

American Home Assurance Co.*, 584 F.2d 1306, 1311 (3d Cir.1978) and citing *Mashuda v. Western

Beef, Inc.*, 527 F.Supp. 887, 891 (W.D.Pa.1981)).

  *Griffith's* approach requires the Court to first determine whether there is a relevant difference

between the law of the states whose laws potentially apply, *i.e.*, whether there is a conflict.

*Hammersmith*, 480 F.3d at 230 (3d Cir. 2007) (citing *Air Products and Chemicals, Inc. v. Eaton

Metal Products Co.*, 272 F.Supp. 2d 482, 290 (E.D. Pa. 2003) (holding that, "[i]f two jurisdictions'

laws are the same, then there is no conflict at all, and a choice of law analysis is unnecessary"). If,

after examining the respective laws of the jurisdictions, the Court finds that a conflict exists, then

it must characterize the conflict as either "true," "false" or "unprovided for." *Id.* (citing *Cipolla v.

Shaposka*, 267 A.2d 856 (Pa. 1970)); *Budget Rent-A-Car System, Inc. v. Chappell*, 407 F.3d 166,

170 (3d Cir. 2005). The Court does so by determining whether each state has a governmental

interest in applying its own laws. *Id.* (citing *Cipolla*, 267 A.2d at 856-67); *Budget Rent-A-Car

System, Inc.*, 407 F.3d at 170. A "true" conflict exists when both states have an interest in applying

their own law. *Id.*; *Budget Rent-A-Car*, 407 F.3d at 170 (quoting *Lacey v. Cessna Aircraft Co.*, 932

F.2d 170, 187 (3d Cir.1991) ("A true conflict exists 'when the governmental interests of [multiple] jurisdictions would be impaired if their law were not applied.'"). A "false" conflict exists when only one state has an actual interest in applying its law. *Lacey*, 932 F.2d at 187. The situation will be considered "unprovided for" when neither has an interest in applyi ng its own law. *Budget Rent-A-Car*, 407 F.3d at 170.

If the Court determines that a "true"conflict exists, it must determine which state has the most significant contacts with the controversy, as provided by the Restatement (Second) of Conflicts. *Hammersmith*, 430 F.3d at 230. (citing *Cipolla*, 267 A.2d at 856)); *see also Melville*, 584 F.2d at 1311. "This analysis requires more than a 'mere counting of contacts.'" *Id*. at 230 (quoting *Cipolla*, 267 A.2d at 856). "'Rather, [the Court] must weigh the contacts on a qualitative scale according to their relation to the policies and interests underlying the [particular] issues.'" *Id*. (quoting *Shields v. Consol. Rail Corp.*, 810 F.2d 397, 400 (3d Cir. 1978)). If the Court determines that a "false" conflict exists, the Court applies the law of the interested state. *Id*. Finally, if the Court determines that the situation is unprovided for, it will apply the substantive law of the *loci delicti*, *i.e.*, the law of the place where the alleged wrong occurred. *Budget Rent-A-Car*, 407 F.3d at 170 (citing *Miller v. Gay*, 470 A.2d 1353, 1355-56 (1983)).

Turning now to the first step, as outlined above, the Court will address each of Plaintiff's remaining claims, to determine whether there are relevant differences in the law of the potentially interested states, Pennsylvania and Arkansas, (*i.e.*, whether a conflicts analysis is warranted).

     **1.**    **Plaintiff's Bad Faith Claim Pursuant to 42 Pa.C.S.A. §8371 Compared to Arkansas Bad Faith Law[4]**

---

[4]

Although, in the second count of her Complaint, Plaintiff alleges breach of duty of good faith

### a. Pennsylvania's Bad Faith Law

Pennsylvania has codified a cause of action for "bad faith" conduct by an insurance company in its handling and/or denial of an insured's claims. 42 Pa.C.S.A. §8371. Specifically, §8371 provides:

> In an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith toward the insured, the court may take all of the following actions:
>
> (1) Award interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of interest plus 3%.
> (2) Award punitive damages against the insurer.
> (3) Assess court costs and attorney fees against the insurer.

Although the statute does not define "bad faith," Pennsylvania courts have set forth two elements necessary to prove a §8371 bad faith claim:

> (1) the insurer did not have a reasonable basis for denying benefits under the applicable insurance policy; and
> (2) the insurer knew or recklessly disregarded its lack of reasonable basis in denying the claim.

*Employers Mut. Cas. Co. v. Loos*, 476 F.Supp. 2d 478, 489-490 (W.D. Pa. 2007) (citing *Terletsky v. Prudential Property*, 649 A.2d 680, 688 (1994)); *see also Adamski v. Allstate Ins. Co.*, 738 A.2d 1033 (Pa. Super. 1999). "While the alleged bad faith need not be the literal action of denying an insured's claim, 'the essence of a statutory bad faith claim under Pennsylvania law is the unreasonable or intentional (or reckless) denial of benefits.'" *Loos*, 476 F.Supp. 2d at 478 (quoting *UPMC Health System v. Metropolitan Life Ins. Co.*, 391 F.3d 497, 506 (3d Cir. 2004)).

---

and fair dealing (Docket No. 1-3 at ¶¶ 23-27), and in the third she alleges bad faith, (Docket No. 1-3 at ¶¶ 28-31), in order to more clearly analyze the choice of law question for Plaintiff's tort claims, the Court will begin with bad faith.

While bad faith can include an unreasonable denial of benefits, or an unfounded refusal to pay insurance proceeds, or lack of a good faith investigation into the facts of a claim, negligence or mere bad judgment is not enough to state a claim for bad faith under Pennsylvania law. 42 Pa.C.S.A. §8371; *Greene v. United Services Auto. Ass'n.*, 936 A.2d 1178 (2007), *appeal denied*, 2008 WL 2894845 (Pa. 2008). *See also Brown v. Progressive Ins. Co.*, 860 A.2d 493, 501 (Pa. Super. 2004) (citing *Adamski v. Allstate Ins. Co.*, 738 A.2d 1033, 1036 (Pa. Super. 1999) appeal denied, 759 A.2d 381 (Pa. 2000) (holding, "[t]o constitute bad faith, it is not necessary that the insurer's conduct be fraudulent ... [h]owever, mere negligence or bad judgment is not bad faith")). "To support a finding of bad faith, the insurer's conduct must be such as to 'import [] a dishonest purpose.'" *Id.* (quoting *Adamski*, 738 A.2d at 1036). "In other words, the plaintiff must show that the insurer breached its duty of good faith through some motive of self-interest or ill will." *Id.*

### b.    Arkansas' Bad Faith Law

In Arkansas, "bad faith" is an actionable first party tort.    Unlike its counterpart in Pennsylvania, however, it has not been codified. *See Aetna Cas. Co. v. Broadway Arms Corp.*, 664 S.W. 2d 463, 465 (Ark. 1984); *R.J. Bob Jones Excavating Contractor, Inc. v. Fireman's Ins. Co. of Newark, N.J.*, 290 S.W. 2d 483, 487 (Ark. 1996). Under Arkansas law, "in order to be successful a claim based on the tort of bad faith must include affirmative misconduct by the insurance company, without a good faith defense, and that the misconduct must be dishonest, malicious, or oppressive in an attempt to avoid its liability under an insurance policy." *Aetna Cas. Co.*, 664 S.W. 2d at 465. Indeed, as in Pennsylvania, Arkansas law requires more than a mere denial of an insurance claim, in order for a plaintiff to state a claim for bad faith. *Unum Life Ins. Co. of America v. Edwards*, 210 S.W. 3d 84, 88 (Ark. 2005). Rather, a plaintiff must show "'dishonest, malicious, or oppressive

19

conduct carried out with a state of mind characterized by hatred, ill will, or a spirit of revenge.'" *Id.* (quoting *State Auto Prop. & Cas. Ins. Co. v. Swaim*, 991 S.W.2d 555 (Ark. 1999)). Moreover, a claim for bad faith cannot be sustained merely because of an alleged "mistake on an insurance carrier's part or negligence or confusion or bad judgment." *Unum Life Ins. Co.*, 210 S.W. 3d at 88. Nor can a claim for bad faith rest on a good faith denial of benefits. *Id.* Like the Pennsylvania bad faith law, in Arkansas, a claim for bad faith can result in punitive damages being awarded against an insurance company as a result of its conduct. *Id.*

### c. Comparison of Pennsylvania and Arkansas Bad Faith Law

Based on this Court's reading of Pennsylvania's statute and case law, interpreting same along with the Arkansas case law cited above, the Court finds that there is no significant, relevant difference in the law of bad faith in Pennsylvania and Arkansas. Rather, both causes of action protect insureds from bad faith conduct on the part of the insurer. 42 Pa.C.S.A. §8371; *Aetna Cas. Co.*, 664 S.W. at 465. Moreover, both states require more than a claim of mere negligence or bad judgment, *Greene*, 963 A.2d at 1178; *Unum*, 210 S.W.2d at 88; they require intentional and malicious conduct, characterized by "ill will" on the part of the insurer. *Greene*, 936 A.2d at 1178; *Unum*, 210 S.W. 2d at 88. Because there is no conflict between the laws of Pennsylvania and Arkansas regarding bad faith, the Court need go no further in its choice of law analysis.

### 2. Plaintiff's Claim for Breach of Duty of Good Faith and Fair Dealing Under Pennsylvania and Arkansas Law

In her Complaint, Plaintiff alleges that, in unreasonably denying her death benefits under the insurance policy, Defendant breached its duty of good faith and fair dealing. (Docket No. 1-3 at ¶¶ 24-25). Specifically, Plaintiff's Complaint alleges:

24. As an insurance company licensed by the Commonwealth of Pennsylvania and as a company doing business in Pennsylvania and a fiduciary, Defendant [] owed Plaintiff a duty of good faith and fair dealing as part of its obligations under insurance Policy Number 0100680799, the insurance that it issued insuring the life of Decedent and for which premiums were paid, thereby creating as an implicit term of the contractual obligations Defendant Lincoln Benefit owed to Plaintiff.

25. Defendant [] breached its duty of good faith and fair dealing owed to Plaintiff by refusing to pay the proceeds due and owing to Plaintiff on the policy for the death of Decedent, a compensable loss under the terms of the policy,

26. Plaintiff has suffered economic loss as a result of Defendant['s] [] refusal to pay her the life insurance proceeds to which she is contractually entitled under the insurance policy.

27. Defendant[']s [] conduct, as described above, was outrageous, malicious, willful, wanton, in reckless indifference to Plaintiff's interests and contrary to the public policy of this Commonwealth, conduct that therefore warrants an award of punitive damages. ...

(Docket No. 1-3 at ¶¶ 24-27). In her response to the instant motion, Plaintiff contends that she is

asserting breach of a common law contractual duty of good faith and fair dealing.[5] (Docket No. 15

---

5

In its Brief in Support of Motion to Dismiss, Defendant argues that Pennsylvania law does not recognize a cause of action for breach of duty of good faith and fair dealing sounding in tort. (Docket No. 4 at 6). The Court agrees that Pennsylvania law does not recognize a claim for breach of duty of good faith and fair dealing sounding in tort. The Pennsylvania Supreme Court has held that there is no cause of action for breach of duty of good faith and fair dealing sounding in tort in the context of a *first party* bad faith case. *Terletsky v. Prudential Property and Cas. Ins. Co.*, 649 A.2d 680, 688 (citing *D'Ambrosio v. Pennsylvania Nat. Mut. Cas. Ins. Co.*, 431 A.2d 966, 970 (Pa. 1981), *superceded by statute on other grounds*; *Romano v. Nationwide Mutual Fire Ins. Co.*, 435 Pa.Super. 545, 552, 646 A.2d 1228, 1232 (1994)); *Greater New York Mut. Ins. Co. v. North River Ins. Co.*, 872 F.Supp. 1403, 1409 (E.D. Pa. 1995) (citing *Gedeon v. State Farm Mut. Auto. Ins. Co.*, 188 A.2d 320 (Pa. 1963)). Rather, said claim has been codified by the enactment of the Pennsylvania Bad Faith Statute, 42 Pa.C.S.A. §8371. *Terletsky*, 649 A.2d at 688; *Employers Mut. Cas. Co. v. Loos*, 476 F.Supp. 2d 478, 488 n. 8 ("The only tort remedy against insurers for bad faith available under Pennsylvania is the statutory remedy provided by §8371") (citations omitted).

While it is less clear whether the Pennsylvania Supreme Court would find that a breach of duty of good faith and fair dealing is an actionable tort in the context of a third party refusal to settle

at 9; Docket No. 9 at 13). Specifically, Plaintiff argues:

> it is clear that Plaintiff is asserting a breach of common law contractual duty of good
> faith and fair dealing. Plaintiff has alleged, among other things, that subsequent to
> informing Plaintiff that Defendant would be forwarding the death benefits from her
> spouse's [p]olicy, Defendant retroactively terminated the [p]olicy under the guise that
> the "Grace Period" covering payment of the last premium had "expired" and in
> so doing refused to pay to Plaintiff the death benefits from the [p]olicy. Plaintiff
> further alleges that Defendant Lincoln Benefit's refusal to pay these proceeds
> amounts to a breach of contractual duty of good faith and fair dealing Defendant
> owed to Plaintiff and is thus a compensable loss *under the terms of the insurance
> policy.*

(Docket No. 9 at 13) (emphasis in original).

### a.     Pennsylvania

In Pennsylvania, a duty of good faith and fair dealing is implied in an insurance contract.

*Condio v. Erie Ins. Exch.*, 899 A.2d 1136, 1144 (Pa. Super. 2006) (citing *O'Donnell*, 734 A.2d at

905). *See also Dercoli v. Pennsylvania Nat. Mut. Ins. Co.*, 554 A.2d 906, 909 (Pa. 1989) (quoting

*Fedas v. Ins. Co. of the State of Pa.*, 141 A.2d 283 (Pa. 1930)). As such, under Pennsylvania law,

a plaintiff may bring a cause of action for breach of the contractual duty of good faith and fair

dealing in the insurance context, permitting an insured to recovery compensatory damages for an

insurer's failure to act in good faith. *Benevento v. Life USA Holdings, Inc.*, 61 F.Supp. 2d 407, 425

(E.D. Pa. 1999) (citations omitted); *Gray v. Nationwide Mut. Ins. Co.*, 223 A.2d 8, 11 (Pa. 1966)

(holding that a common law breach of contract action will lie for the insurer's failure to comply with

---

or failure to defend case, see NORTON ON INSURANCE COVERAGE IN PENNSYLVANIA at §§7.A(1)(b),
7.A(2); *Birth Center v. St. Paul Cos.*, 787 A.2d 376, 386 (Pa. 2001), the Court has recently suggested
that §8371 provides the exclusive remedy for obtaining punitive damages as a result of an insurer's
bad faith conduct in "discharg[ing] its obligation of defense and indemnification in the third-party
claim context or its obligation to pay for a loss in the first party claim context."*Toy v. Met. Life Ins.
Co.*, 928 A.2d 186, 199 (Pa. 2007) (citations omitted).

22

its obligation to act in good faith and with due care in representing the interests of the insured in its

failure to settle with a third party); *Johnson v. Beane*, 664 A.2d 96, 101 (Cappy, J. concurring)(citing

*Cowden v. Aetna Casualty and Surety Company*, 389 Pa. 459, 134 A.2d 223 (1957)). *See also Birth*

*Center v. St. Paul Cos.*, 787 A.2d 376, 385-86 (Pa. 2001) (holding that, in the context a third party

case in which the insurer refused to settle a claim on behalf of the insured, "nothing in *D'Ambrosio*

bars a party bringing a bad faith action sounding in contract from recovering damages that are

otherwise available to parties in contract actions ... .")

However, Pennsylvania law does not recognize a *separate* breach of contractual duty of good

faith and fair dealing where said claim is subsumed by a separately pled breach of contract claim.

*LSI Title Agency, Inc.v. Evaluation Services, Inc.*, 951 A.2d 384, 391 (Pa. Super. 2008), *appeal*

*denied*, 960 A.2d 841(Pa. 2008); *Sommers v. Sommers*, 613 A.2d 1211, 1215 (Pa. Super. 1992). *See*

*Ross v. Metropolitan Life Ins. Co.*, 411 F.Supp. 2d 571, 583-4 (W.D. Pa. 2006) (dismissing a breach

of fiduciary duty claim as redundant of the plaintiff's breach of contract claim); *accord Belmont*

*Holdings Corp. v. Unicare Life & Health Ins. Co.*, No. Civ. A. 98-2365,1999 WL 124389 at *4 (E.D.

Pa. February 5, 1999). Moreover, applying Pennsylvania law, several courts have held that, where

the plaintiff alleges that the defendant breached its duty of good faith and fair dealing by denying

first party benefits under an insurance policy, said claim is subsumed by the plaintiff's breach of

insurance contract claim premised on the same conduct. In *Meyer v. Cuna Mut. Group*, 2007 WL

2907276 at *15 (W.D. Pa. September 28, 2007), for example, the Court held that where the conduct

forming the basis of the plaintiff's breach of duty of good faith and fair dealing claim is the same

conduct forming the basis for the breach of contract claim, the claims merge and there is no separate

cause of action for breach of duty of good faith and fair dealing. *Id.* at * 15 (quoting *JHE, Inc. v.*

*SEPTA*, No. 1790, 2002 WL 1018941, at *5 (Phila.C.P. May 17, 2002)) ("'[T]he implied covenant of good faith does not allow for a claim separate and distinct from a breach of contract claim. Rather, a claim arising from a breach of the covenant of good faith must be prosecuted as a breach of contract claim, as the covenant does nothing more than imply certain obligations into the contract itself'"). *See also Garvey v. National Grange Mut. Ins. Co.*, No. 95-0019, 1995 WL 115416, at *4 (E.D.Pa. Mar. 16, 1995); *Ingersoll-Rand Equip. Corp. v. Transportation Ins. Co.*, 963 F.Supp. 452, 453-54 (M.D.Pa.1997). *See also Greater New York Ins. Co. v. North Ins. Co.*, 872 F.Supp. 1403, 1409 (E.D.Pa.1995), *aff'd*, 85 F.3d 1088 (3d Cir.1996) (stating "[t]he Pennsylvania Supreme Court treats the breach of contractual duty of good faith and breach of fiduciary duty synonymously in the context of insurance cases") (citation omitted).

In support of her argument that Pennsylvania recognizes a claim for contractual breach of duty of good faith and fair dealing, Plaintiff relies on *Benevento v. Life USA Holdings, Inc.*, 61 F.Supp. 2d 407, 425 (E.D. Pa. 1999). (Docket No. 9 at 12). The Court concludes, however, that *Benevento* is inapposite to the instant matter. In *Benevento*, the Court held that the plaintiffs were not precluded from bringing a claim for breach of contractual duty of good faith and fair dealing in addition to a claim for bad faith under §8371. *Id.* at 425. The plaintiffs, however, did *not* bring a separate breach of contract claim in addition to their breach of duty of good faith and fair dealing and bad faith claims, *Id.* at 413, as is the case here.[6]

Additionally, *Benevento* is factually distinguishable from the instant case. There, the

_____

[6]

The Court also notes that *Benevento* was decided prior to the Superior Court of Pennsylvania's decision in *LSI Title Agency, Inc.v. Evaluation Services, Inc.*, 951 A.2d 384, 391 (Pa. Super. 2008), *appeal denied*, 960 A.2d 841(Pa. 2008), to which this Court must give deference.

plaintiffs alleged that the defendants breached their duty of good faith and fair dealing prior to the formation of any contracts by misrepresenting the terms of the annuity contracts in order to solicit the plaintiffs' business. Here, Plaintiff alleges that, in refusing to pay the death benefit under the terms of the insurance policy, Defendant has breached the insurance contract and the implied duty of good faith and fair dealing. (Docket No. 1-3, at ¶¶21-22; ¶¶23-27). Plaintiff's breach of duty of good faith and fair dealing claim is premised on the same conduct as her breach of contract claim and is therefore redundant of her breach of contract claim. As such, *Benevento* is not applicable to this case and Plaintiff's breach of duty of good faith and fair dealing claim is not recognized as a separate cause of action under Pennsylvania law. *See Ross*, 411 F.Supp. 2d at 584.

### b. Arkansas

Under Arkansas law, every contract contains an implied covenant of good faith and fair dealing. *Yarborough v. DeVilbiss Air Power, Inc.*, 321 F.3d 728, 732 (8th Cir. 2003) (citing *TCBY Systems, Inc. v. RSP Co., Inc.*, 33 F.3d 925, 928-9 (8th Cir. 1994)). However, Arkansas law does not recognize a claim for breach of duty of good faith and fair dealing sounding in contract, separate from a breach of contract claim. *Country Corner Food and Drug, Inc. v. First State Bank and Trust Co.*, 966 S.W.2d 894, 899 (Ark. 1999) ("[T]his court has never recognized a cause of action for failure to act in good faith"); Moreover, Arkansas does not recognize a breach of duty of good faith and fair dealing separate from a bad faith claim. *Id.*; *Preston v. Stoops*, ---S.W.3d ---, 2008 WL 2287217 at *1 (Ark. 2008) ("[T]his court has expressly stated that there is no cause of action in tort for breach of the covenant of good faith and fair dealing. ... This court has recognized the affirmative tort of *bad faith* only against insurance companies") (emphasis added).

An insured may be entitled to damages where an insurer engaged in malicious and

unreasonable affirmative conduct in unreasonably denying insurance benefits under a policy. *Unum*, 210 S.W. 3d at 88; *Aetna Cas. Co.*, 664 S.W. 2d at 465. However, such claim is a claim for bad faith under Arkansas law. *Id.* Here, Plaintiff has alleged both a breach of duty of good faith and fair dealing and a claim for bad faith. Under Arkansas law, this is the same cause of action. *See Findley v. Time Ins. Co.*, 574 S.W. 2d 908 (Ark. 1978); *Stoops*, 2008 WL 2287217 at *1 (Ark. 2008). Therefore, like Pennsylvania, Arkansas does not recognize Plaintiff's separate contract or tort claim for breach of duty of good faith and fair dealing.

As there is no cause of action for breach of duty of good faith and fair dealing separate from a breach of contract and/or bad faith claim under both Pennsylvania and Arkansas law, given Plaintiff's allegations, the Court need not continue in its choice of law analysis.

### 3. Negligent Misrepresentation under Pennsylvania and Arkansas Law

In the context of insurance contracts, Pennsylvania law recognizes a claim for negligent misrepresentation. *See Tran v. Metropolitan Life Ins. Co.*, 408 F.3d 130, 136, n. 8 (3d.Cir. 2005). *See also Bortz v. Noon*, 729 A.2d 555, 560 (Pa. 1999) (citing Gibbs v. Ernst, 647 A.2d 882, 889)). Under Arkansas law, however, no cause of action exists for negligent misrepresentation. *South County, Inc. v. First Western Loan Co.*, 871 S.W. 2d 325, 326 (Ark. 1994) ("We decline to recognize the tort of negligent misrepresentation"). Because Pennsylvania law recognizes a claim for negligent misrepresentation and Arkansas does not, there is a conflict of laws regarding this claim. Accordingly, the Court must now characterize the conflict in order to determine which state law should apply to Plaintiff's tort claim for negligent misrepresentation.

Under Pennsylvania law, the goal of a negligent misrepresentation claim is to protect a

plaintiff from fraudulent or deceitful conduct on the part of the defendant. *Bortz*, 729 A.2d at 561 (Pa. !999). Therefore the interest protected by permitting such a claim is Pennsylvania's interest in protecting its plaintiffs. *Id.* On the other hand, in refusing to recognize a claim for negligent misrepresentation, the Arkansas Supreme Court specifically found that a claim asserting that a defendant made a representation based on a falsehood was not enough to state a claim warranting damages, even where the plaintiff relied upon said representation. *South County Inc.*, 871 S.W. 2d at 326. As such, Arkansas law protects defendants from unwarranted claims for damages based on negligent misrepresentations. In this case, however, Defendant is not an Arkansas defendant. Rather, it is a Nebraska corporation, having its principal place of business in Illinois. (Docket No. 1-3 at ¶2).

When a Court concludes, after analyzing the policies and interests serving as the bases for the respective states' competing laws, that applying one state's law would not further the interests or policies of the competing state and, in addition, applying the other state's competing law would not adversely affect the interests or policies of the first state's law, a false conflict exists. *Hammersmith*, 480 F.3d at 220; *Wensley v. Scott*, 459 F.Supp.2d 388, 392 (W.D. Pa. 2006) (citing *Lacey v. Cessna Aircraft Company, et al.*, 932 F.2d 170, 187 (3d Cir.1991)) (citations omitted). *See also Cipolla*, 267 A.2d at 855 and *Arcila v. Christopher Trucking*, 195 F.Supp.2d 690, 692 (E.D. Pa. 2002) (quoting *LeJeune v. Bliss-Salem, Inc.*, 85 F.3d 1069, 1071 (3d Cir.1996)) ("'A false conflict exists where only one jurisdiction's governmental interests would be impaired by the application of the other jurisdiction's law'"). In this case, the Court determines that the policy or governmental interest underlying Pennsylvania's recognition of a claim for the tort of negligent misrepresentation in insurance contract cases is the protection of Pennsylvania plaintiffs. The interest or policy serving

as the basis of Arkansas' law regarding negligent misrepresentation is the protection of Arkansas defendants. Applying Arkansas law to Plaintiff's negligent misrepresentation claims in this case would not further Pennsylvania's interest in protecting its Plaintiff because Arkansas law would not permit her to bring said claim. Moreover, applying Pennsylvania law here would not adversely affect Arkansas' interest in protecting its defendants, because in this case Defendant is not a citizen of Arkansas. As such, a false conflict exists between the competing laws of Pennsylvania and Arkansas and the Court must apply the law of the interested state. *See Fresh Start Indus., Inc. v. ATX Telecom. Services*, 295 F.Supp.2d 521, 526 (E.D. Pa. 2003) (citing *Lacey*, 932 F.2d at 187). Here, Pennsylvania is the interested state; therefore the Court will apply Pennsylvania law.

## B. Plaintiff's Breach of Contract Claims

Under Arkansas law, in order to state a claim for breach of contract, a "complaint need only assert the existence of an enforceable contract between the plaintiff and defendant, the obligation of the defendant thereunder, a violation by the defendant, and damages resulting to the plaintiff from the breach." *Smith v. Eisen*, 245 S.W. 3d 160, 168 (Ark. App. 2006).

In its Brief in Support of Motion to Dismiss, (Docket No. 4), Defendant argues that the Plaintiff has failed to state a claim upon which relief may be granted, insofar as the subject insurance policy lapsed prior to Decedent's death. Therefore, the policy was not in effect at the time of Decedent's death, and Plaintiff is not entitled to the death benefits. (Docket No. 4 at 5). Defendant argues that the allegations in Plaintiff's Complaint "clearly establish that the Policy had lapsed and therefore was 'no longer in force' as of Decedent's tragic death.' Hence, Plaintiff cannot establish the existence of an enforceable contract." (Docket No. 4 at 5).

In response to Defendant's Motion to Dismiss, Plaintiff argues that there is an ambiguity in

28

the insurance policy regarding the meaning of the term "grace period" and that both she and Decedent misunderstood the term. (Docket No. 9 at 8; Docket No. 1-3 at ¶12). Therefore, she contends, the policy should be construed in her favor as being in force at the time of Decedent's death. (Docket No. 9 at 8). Specifically, the Plaintiff contends that, after receiving the "Second Notice of Payment Due," dated October 6, 2007, she and Decedent believed that the "grace period" for payment of premiums began as of the date of said notice. (Docket No. 9 at 6). Moreover, Plaintiff asserts that she believed the grace period lasted 30 days, and, as a result, the policy premium payment would be due by November 5, 2007. (Docket No. 9 at 6).

In support of her assertion that she reasonably misunderstood the date on which the grace period would end and the policy would lapse because of an ambiguity in the insurance policy, Plaintiff points to her allegations that Defendant's representatives were also "confused" as to the dates applicable to the grace period. (Docket No. 9 at 10). In particular, Plaintiff alleges that, according to the terms of the insurance policy, the policy would lapse for non-payment of premiums at the end of the grace period "as of the due date of the unpaid premiums," which would mean that the policy would have lapsed on September 27, 2007. (Docket No. 9 at 10) (quoting Docket No. 1, Exh. A at 7). However, Plaintiff alleges that, in its November 2, 2007 correspondence to Plaintiff, Defendant stated that Decedent's policy had lapsed on October 28, 2007, not September 27, 2007. (Docket No. 9 at 10).

Plaintiff further argues that the Second Notice of Payment due implied that her grace period began to run on October 6, 2007 and that she has provided "ample factual allegations to support the reasonableness of [her] belief that the grace period noted in Defendant's Second Notice of Payment began to run on October 6, 2007," including, inter alia, the fact that: (1) the Second Notice of

Payment was not a termination or suspension; (2) the Second Notice of Payment Due was not labeled a "final" notice, suggesting there would be further notice; (3) the Second Notice of Payment, dated October 6, 2007, stated only that the policy had entered its grace period, with no other indication of the date in which it entered that grace period; and (4) the Second Notice does not indicate the date the grace period would lapse. (Docket No. 9 at 7). Plaintiff argues that these allegations, at a minimum, "have firmly established that Defendant's [p]olicy is ambiguous on its face and/or that Defendant's Second Notice of Payment and the representations therein created a latent ambiguity that otherwise did not exist with regard to the Policy's terms covering the grace period." (Docket No. 9 at 8).

Under Arkansas law, interpretation of an insurance contract is generally a question of law to be determined by the court. *Nicholas v. Farmers Ins. Co.*, 128 S.W. 3d 1, 4 (Ark. App. 2003) (citing *Elam v. Unum Life Ins. Co.*, 57 S.W. 3d 165 (2001)). However, when the parties introduce extrinsic evidence as to the meaning of language in an insurance contract, the question of an ambiguity in the policy becomes a factual matter for a jury to determine. *Id.* When the parties' interpretation of a contract does not depend on disputed extrinsic evidence, however, the construction of policy provisions are a matter of law. *Smith v. Prudential Property and Cas. Ins. Co.*, 10 S.W. 3d 846, 850 (Ark. App. 2000)."Where there is a dispute as to the meaning of a contract term or provision, the trial court must initially perform the role of gatekeeper, determining first whether the dispute may be resolved by looking solely to the contract or whether the parties rely on disputed extrinsic evidence to support their proposed interpretation." *Curley v. Old Reliable Cas. Co.*, 155 S.W. 3d 711, 713 (Ark. App. 2004)(citations omitted). The Court performs this function by looking at the policy language to determine whether it is ambiguous. If it is not ambiguous, no further steps

are required. *Smith*, 194 S.W.3d at 219 (citing *Elam*, 57 S.W.2d at 165). *See also Philadelphia Indem. Co. v. Carco Rentals, Inc.*, 923 F.Supp. 1143, 1149 (W.D. Ark. 1996) (quoting *Hancock v. Tri-State Ins. Co.*, 858 S.W.2d 152 (Ark. App. 1993)) ("'If some ambiguity creeps in, the interpreting court must first seek resolution within the wording of the instrument before resort to extraneous information is used'").

The language of an insurance policy is ambiguous if "there is doubt or uncertainty as to its meaning and it is fairly susceptible to more than one reasonable interpretation." *Nichols*, 128 S.W. 3d at 4 (citing *Continental Cas. Co. v. Davidson*, 463 S.W. 2d 562 (Ark. App. 1971)); *Curley*, 155 S.W.3d at 713 (citing *Gawrieh v. Scottsdale Ins. Co.*, 117 S.W. 3d 634 (Ark. App. 2003)). In determining whether an ambiguity exists in a provision of the policy, the entire policy must be read as a whole, and interpreted so as to give effect to all of its provisions. *Id.*; *Smith*, 114 S.W. 3d at 205 (citing *Davidson*, 463 S.W. 2d at 652). While the language of an insurance policy is to be strictly construed in favor of the insured, against the insurer, the Court must give effect to the plain language of the policy. *Id.* (citing *Smith v. Southern Farm Bureau Cas. Ins. Co.*, 114 S.W. 3d 205 (Ark. App. 2000)); *Curley*, 155 S.W. 3d at 713. Indeed, "[t]he language of an insurance policy is to be construed in its plain, ordinary, and popular sense." Nichols, 128 S.W. 3d at 4. *McGrew v. Farm Bureau Mut. Ins. Co.*, 371 Ark. 567, --- S.W.3d ---- (Ark. 2007).

In regard to the term "grace period," the insurance contract provides:

> *grace period*
>
> You are allowed a grace period of thirty-one days after the premium due date in which to pay premiums. This policy remains in force during the grace period. There is no grace period for the first premium.

31

(Docket No. 1-3, Exh. A at 7) (emphasis in original). The policy further provides that if the premium payment is not paid by the end of the grace period, the policy will lapse "as of the due date of the unpaid premium." (Docket No. 1-3, Exh. A at 7). Generally, the function of a grace period term in an insurance contract is to permit the policy to remain in force for a period after non-payment of a premium and is for the protection of the insured. COUCH ON INSURANCE 3d §76:47. Where the insurance contract provides a grace period, the length of that period is governed by the policy term. *Id.* §76:52. Under Arkansas statutory law, insurers are required to include a thirty-one day grace period in all life insurance policies. Ark. Code. Ann. §23-79-111; §23-83-110; *Dodson v. J.C. Penney Co., Inc.*, 336 F.3d 696, 701 (8th Cir. 2003). Here, as the policy provides for a thirty-one day grace period, the language of the policy conforms to this requirement.

In this case, the premium due date was September 27, 2007. (Docket No. 1-3, Exhs. B, C). Thirty one days from September 27, 2007 was October 28, 2007.[7] (Docket No. 1-3, Exh. C). Under the plain terms of the policy, the Court finds there is no ambiguity in the "grace period" provision. Rather, the policy plainly states that the grace period would run thirty-one days past the premium due date. The grace period therefore expired on October 28, 2007. The policy further provides that if an insured does not pay "the premium due by the end of the grace period, [the] policy will lapse as of the date of the unpaid premium." (Docket No. 1-3, Exh. A at 7). Because the premium was not paid by the end of the grace period, the policy lapsed as of September 27, 2007.

While Plaintiff argues that the correspondence she and Decedent received from Defendant,

---

[7]

See COUCH ON INSURANCE 3d at §76:52 (citing *United Order of Good Samaritans v. Grigsby*, 22 S.W. 2d 31 (Ark. 1929) ("[I]n deciding when a particular grace period commences, the day on which the premium fell due is excluded").

as well as Defendant's alleged representation that her claim would be processed are evidence of an ambiguity in the policy, the Court does not agree. Rather, the correspondence received from Defendant, namely the "Notice of Premium Due" (Docket No. 1-3, Exh.B) and "Second Notice of Premium Due" (Docket No. 1-3, Exh. C) both affirm that the premium due date was September 27, 2007, thereby confirming that the grace period on the insurance policy terminated on October 28, 2007.

Nor is the Plaintiff's claim saved by her argument that both she and decedent "misunderstood" the term "grace period" to mean thirty-days past the "Second Notice of Premium Due". A plaintiff has a duty to read the policy and educate herself "concerning matters of insurance coverage." *Martin v. Equitable Life Assur. Soc. of the U.S.*, 40 S.W. 3d 733, 738 (Ark. 2001) (citing *Howell v. Bullock*, 764 S.W.2d 422, 424 (Ark. 1989) and *Stokes v. Harrell*, 289 Ark. 179, 711 S.W.2d 755 (1986)). "Furthermore, Arkansas law provides that an insured has a duty to understand his insurance policies and the extent of their coverage." *Lawrence v. Pile*, No. 08- cv- 03615, 2009 WL 331314 at *2 (E.D. Ark. February 9, 2009) (citing *Phila. Indem. Ins. Co. v. Carco Rentals, Inc.*, 923 F.Supp. 1143, 1154 (W.D.Ark.1996)).[8] Moreover, the insurance policy plainly instructs: **READ YOUR POLICY CAREFULLY**. (Docket No. 1-3, Exh. A at 3). As such, as an insured, it was Decedent's duty to read the policy terms concerning "grace period" and to understand that the policy would lapse and no longer be in force thirty-one days past the premium due date of September 27,

---

[8]

Similarly, Pennsylvania law imposes a duty on an insured to read and understand his or her insurance policies. *Standard Venetian Blind Co. v. American Empire Ins. Co.*, 469 A.2d 563, 305 (Pa. 1983).

2007.[9]

Additionally, Plaintiff's arguments that the "Second Notice of Payment Due" was ambiguous because it was not labeled a final notice, nor did it define the term "grace period" is unfounded. Where the language of an insurance policy is plain, the Court need not strain that language by creating ambiguities that do not exist. *Smith*, 114 S.W.3d at 192. Additionally, the fact that Defendant's agent provided Plaintiff with instruction as to how to file a claim for death benefits under the policy does not render the policy language ambiguous. The policy provides: "[t]hese pages are your entire contract with us. ... Only our officers have authority to change this contract. No agent may do this. Any change must be written." (Docket No. 1-3, Exh. A at 7). Again, the policy language is clear. Any mistake of the insurer's agent in the course of conversation that the policy was still in force does not change the meaning of the clear language in the policy. *See Philadelphia Indem. Ins. Co.*, 923 F.Supp. at 1150 (quoting *Hancock*, 858 S.W. 2d at 152).

Finally, while Plaintiff argues that Defendant itself misunderstood the policy, insofar as its November 2, 2007 letter stated that the "policy terminated on October 28, 2007," (Docket No. 1-3 Exh. E), when the policy provided that the policy would lapse on September 27, 2007, this also does not render the policy language ambiguous. The policy language clearly provides if the premium payment is not paid by the end of the grace period, the policy will lapse "as of the due date of the unpaid premium." (Docket No. 1-3, Exh. E at 7). In the Court's estimation, the language of the November 2, 2007 correspondence suggests that the grace period had ended as of October 28, 2007, and as a consequence the policy was no longer in force. (Docket No. 1-3, Exh. E).

---

[9]

Likewise, the beneficiary had a duty to read and comply with the terms of the policy in seeking payment under it.

Because the policy had lapsed as of September 27, 2007, at the time of Decedent's death on November 1, 2007, there was no contract of insurance between the parties. In order to state a claim for breach of contract, Arkansas law requires that a complaint plead the existence of an enforceable contract. *Eisen*, 245 S.W. 3d at 168. Here, as Plaintiff has not done so, she has failed to state a plausible claim for relief. *See Wilkerson*, 522 F.3d at 322 (citing *Phillips*, 515 F.3d 224). As such, Defendant's motion to dismiss must be granted.

### C.    Plaintiff's Breach of Duty of Good Faith and Fair Dealing Claim

As discussed above in the Court's choice of law analysis, neither Pennsylvania nor Arkansas law provides a separate cause of action for breach of duty of good faith and fair dealing given the circumstances of this case. Specifically, because Plaintiff has pled that she is entitled to damages for the breach of an implied duty of good faith and fair dealing as a result of Defendant's denial of benefits under the policy, (Docket No. 1-3 at ¶30), she has not pled a recognized cause of action under either Pennsylvania or Arkansas law. Therefore, she has not pled a plausible claim and Defendant's motion as to this count must be granted. *Twombly*, 127 S.Ct. at 1974

### D.    Plaintiff's Bad Faith Claim

Plaintiff alleges that Defendant acted in bad faith "by refusing to pay the proceeds due and owing to Plaintiff" pursuant to the Pennsylvania Bad Faith Statute, 42 Pa.C.S.A. §8371. (Docket No. 1-3 at ¶29). Plaintiff further alleges that, in failing to pay Plaintiff death benefits under the terms of the policy, Defendant's conduct was "outrageous, malicious, willful, wanton, in reckless indifference to Plaintiff's interests and contrary to the public policy of this Commonwealth." (Docket No. 1-3 at ¶30).

In its Brief in Support of Motion to Dismiss, Defendant argues that Plaintiff has failed to state

a claim under 42 Pa.C.S.A. §8371, insofar as there was no contract in effect at the time of Decedent's death. Defendant argues that because §8371 claims are limited to actions "arising under an insurance policy," Plaintiff's claims must fail. (Docket No. 4 at 7). Alternatively, Defendant argues that, assuming Plaintiff could prove the existence of a contract at the time of Decedent's death, Plaintiff has not sufficiently pled that Defendant's conduct amounted to bad faith. (Docket No. 4 at 7-8).

Under both Pennsylvania and Arkansas law, in order to state a claim for bad faith, there must be a contractual relationship between the parties. 42 Pa.C.S.A. §8371; *Quinn Companies, Inc. v. Herring-Marathon Group, Inc.*, 773 S.W. 2d 94 (Ark.1989), meaning, the insurance policy must have been in force at the time that any bad faith claims arose. As discussed above, the grace period for payment of premiums on the policy expired on October 28, 2007, causing the policy to lapse as of the premium due date, September 27, 2007. Hence, no insurance contract was in force at the time of the Decedent's demise.

Plaintiff claims, however, that Defendant acted in bad faith in communicating to Plaintiff that proceeds would be paid and then "refusing to pay proceeds due and owing to [her] on the policy for the death of Decedent, a compensable loss under the terms of the insurance policy" and (Docket No. 1-3 at ¶25). As such, Plaintiff's bad faith claims are premised on conduct which occurred subsequent to Decedent's death, when the policy was no longer in force. Because no contract existed at the time the alleged bad faith denial occurred, Plaintiff has failed to state a plausible claim for relief for bad faith. Furthermore, Defendant had a reasonable basis to deny Plaintiff's claims, as the policy was not in effect at the time of Decedent's death. As such, Plaintiff's Complaint does not properly plead a claim for bad faith. *See Parker v. Southern Farm Bureau Cas. Ins. Co.*, 935 S.W.2d

556, 562 (Ark. 1996) (finding no bad faith when the insurance company denied coverage based on non-payment of premiums); *Kidd v. Prudential Ins. Co. of America*, Civil Action No. 05-cv-1177, 2008 WL 163055at *17 (M.D. Pa. January 15, 2008) (citing *Klinger v. State Farm Mut. Auto. Ins. Co.*, 115 F.3d 230, 233 (3d Cir.1997)) (finding that, where the decedent's policy had lapsed based on non-payment of premiums prior to his death, insurer did not act in bad faith in denying benefits). Defendant's motion to dismiss Plaintiff's bad faith claim must, therefore, be granted.

### E.    Plaintiff's Negligent Misrepresentation Claim

In order to state a claim for negligent misrepresentation under Pennsylvania law, a plaintiff must plead: "'(1) a misrepresentation of material fact; (2) made under circumstances in which the misrepresenter ought to have known of the falsity; (3) with an intent to induce another to act on it; and [ ](4) which results in injury to a party acting in justifiable reliance on the misrepresentation.'" *Tran*, 408 F.3d at 136, n.8 (quoting *Bortz v. Noon*, 556 Pa. 489, 729 A.2d 555, 561 (1999)) (emphasis removed). In regard to her negligent misrepresentation claims, Plaintiff alleges:

> [Defendant] falsely or untruly represented to Plaintiff that Plaintiff's contractual claims under insurance contract Policy Number 0100680799 would be paid in a timely manner upon [Defendant's] receipt of the proper forms.

(Docket No. 1-3 at ¶33).

Defendant argues that Plaintiff's claim for negligent misrepresentation fails, under Pennsylvania law, insofar as it is barred by the gist of the action doctrine. (Docket No. 4 at 8). Alternatively, Defendant argues that even if Plaintiff's claim for negligent misrepresentation was not barred, she has failed to state a claim under Pennsylvania law.

Under Pennsylvania law, the "gist of the action" doctrine will bar a claim for negligent

misrepresentation when said claim sounds in contract. *See Sunburst Paper LLC v. Keating Fibre Intern., Inc.*, Civil Action No. 06- 3959, 2006 WL 3097771 at \*2 (E.D. Pa. October 30, 2006)(citing *eToll, Inc. v. Elias/Savion Advertising, Inc.*, 811 A.2d 10, 19 (Pa. Super. 2002)); *U.S. Claims, Inc.v. Saffren & Weinberg, LLP*, Civ. A. No. 07-0543, 2007 WL 4225536 at \*11 (E.D. Pa. November 29, 2007). "When a plaintiff alleges that the defendant committed a tort in the course of carrying out a contractual agreement, Pennsylvania courts examine the claim and determine whether the 'gist' or gravamen of it sounds in contract or tort." *Sunquest Information Systems, Inc. v. Dean Witter Reynolds, Inc.*, 40 F.Supp. 2d 644, 651 (W.D. Pa. 1999). While the mere fact that a plaintiff alleges a contractual relationship will not preclude the plaintiff from also bringing tort claims, "[t]he gist of the action doctrine [] precludes one from pursuing a tort action for the mere breach of contractual duties, without any separate or independent event giving rise to the tort." *Air Prods. and Chems., Inc. v. Eaton Metal Prods. Co.*, 256 F.Supp.2d 329, 340 (E.D.Pa.2003). "Put simply, a plaintiff cannot assert a fraud or negligent misrepresentation claim when that theory is 'merely another way of stating its breach of contract claim,' or when its success "would be wholly dependent upon the terms of the contracts...."*Sunquest*, 40 F.Supp. 2d at 651 (citing *C.P. Cook Coal Co. v. Browning Ferris, Inc.*, No. 93-7085, 1995 WL 251341 at \*5 (E.D. Pa. April 26, 1995); *accord USX Corp. v. Prime Leasing, Inc.*, 988 F.2d 433, 440 (3d Cir. 1993) (dismissing tortious misrepresentation claim when same conduct formed basis for alleged breach of contract)) (citations omitted).

Under Pennsylvania law, a claim for negligent misrepresentation will sound in tort when the tort itself is the gist of the action, and the contract is merely collateral to the defendant's alleged conduct. *Redevelopment Auth. of Cambria Cty. v. Int'l Ins. Co.*, 685 A.2d 581, 591 (Pa. Super. 1996) (citing *Bash v. Bell Telephone Co.*, 601 A.2d 825 (Pa.Super. 1992) (noting that "a contract

action may not be turned into a tort action simply by alleging that the conduct in question was done wantonly"). In the instant case, Plaintiff's negligent misrepresentation claims are based on representations that Defendant allegedly made to Plaintiff regarding payment of death benefits under the insurance policy. Any such representations on the part of Defendant were done in the context of an alleged contractual relationship. Moreover, Plaintiff's claims that Defendant represented that it would pay benefits under the policy, and thereafter failed to do so are essentially a restatement of her breach of contract claims. *See Horizon Unlimited, Inc. v. Silva*, No. Civ. A. 97-7430, 1998 WL 88391 at *5 (E.D.Pa. February 26, 1998) (holding that claims that defendant made negligent misrepresentations in defendant's promotional literature were essentially intertwined with plaintiff's breach of contract claims); and *Blue Mountain Mushroom Co., Inc. v. Monterey Mushroom, Inc.*, 246 F.Supp. 2d 394, 402 (E.D. Pa. 2002) (holding that, where a defendant stated that it would adhere to a contract then failed to do so, plaintiff's negligent misrepresentation claim was merely a restatement of its breach of contract claims). As such, Plaintiff's claims for negligent misrepresentation are barred by Pennsylvania's gist of the action doctrine. Because Plaintiff's claims for negligent misrepresentation are barred, she has failed to state a plausible claim and Defendant's motion to dismiss as to this count must likewise be granted.

### F. Plaintiff's Request for Leave to Amend

In her response to Defendant's Motion to Dismiss, Plaintiff seeks leave to amend, should this Court grant said motion. (Docket No. 9 at 18). As discussed above, Plaintiff's claims must be dismissed, as her claims are based on a denial of death benefits under a life insurance policy which was not in effect at the time of Decedent's death. Amendment would, therefore, be futile. Plaintiff's request for leave to amend is denied. *See Cowell v. Palmer Township*, 263 F.3d 286, 296 (3d

Cir.2001) ("leave to amend need not be granted when amending the complaint would clearly be futile" ); *Cureton v. NCAA*, 252 F.3d 267, 273 (3d Cir.2001) (a court may deny leave to amend a complaint that fails to state a claim on grounds of futility).

## ORDER

Based on the foregoing, the Defendant's Motion to Dismiss the Plaintiff's Complaint is hereby, GRANTED.

*s/ Nora Barry Fischer*
Nora Barry Fischer
United States District Judge

Dated: March 23, 2009.

cc:    All counsel of record